# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of January, 2016**, are as follows:

**BY KNOLL, J.**:

2015-C -0905    CALVIN ARRANT v. WAYNE ACREE PLS, INC. & LOUISIANA WORKERS'
                COMPENSATION CORPORATION (Office of Workers' Compensation,
                District 1E)

                Accordingly, we reverse and vacate in part that portion of the
                judgment sustaining the defendants' peremptory exception of
                prescription, and we remand for the OWC to consider the merits of
                Arrant's claim that the medical director failed to appropriately
                apply the medical treatment guidelines in denying the lumbar
                spine magnetic resonance imaging requested by his orthopedic
                surgeon. In all other respects, we affirm the judgment.
                AFFIRMED IN PART. REVERSED AND VACATED IN PART. REMANDED.

                GUIDRY, J., dissents for reasons assigned by Justice Crichton.
                CRICHTON, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0905

CALVIN ARRANT

VERSUS

WAYNE ACREE PLS, INC. & LOUISIANA WORKERS'
COMPENSATION CORPORATION

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND
CIRCUIT, OFFICE OF WORKERS' COMPENSATION, DISTRICT 1E

**KNOLL, J.**

This writ concerns whether a statutory prescriptive period can be shortened by an administrative rule. This issue arises in a workers' compensation case where the hearing officer refused to consider the worker's request to have medically recommended magnetic resonance imaging ("MRI") of his lumbar spine because the worker failed to appeal the Office of Workers' Compensation Administration medical director's decision denying his request for medical treatment within the 15-day time period required by an administrative rule.[1] In so doing, the hearing officer sustained defendants' peremptory exception of prescription. We find the hearing officer erred as a matter of law. We reverse and vacate in part that portion of the judgment sustaining the defendants' peremptory exception of prescription, and we remand for the Office of Workers' Compensation ("OWC") to consider the merits of the worker's claim that the medical director failed to appropriately apply the medical treatment guidelines in denying the lumbar spine MRI requested by the

_____

[1] Because the medical director denied the worker's request for medical treatment, the worker's lawyer advanced the funds for the MRI, and the worker's claim evolved from a request for medical treatment to a request for reimbursement.

worker's orthopedic surgeon. In all other respects, we affirm the judgment.[2]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 30, 2012, Calvin Arrant[3] suffered injuries from an accident when an eighteen-wheeler ran a red light and struck the work vehicle he was driving in the course and scope of his employment with Wayne Acree PLS, Inc. ("Acree, Inc.").[4] After meeting with an attorney, Arrant consulted with Dr. Douglas Brown, an orthopedic surgeon, concerning pain in his back that had begun radiating into his legs. To help diagnose the problem, Dr. Brown recommended a lumbar MRI. Arrant's attorney contacted Louisiana Workers' Compensation Corporation ("LWCC"), the workers' compensation carrier for Acree, Inc., to ascertain whether LWCC would agree to provide the recommended MRI. According to the trial testimony of Arrant's former attorney, LWCC responded that "it would have to be approved by the workers' comp people."

On two occasions, Arrant submitted requests to the medical director seeking approval for the recommended MRI, as required by La. Rev. Stat. 23:1203.1(J). The medical director denied both of these requests, issuing these decisions via facsimile on September 18, 2012, and on October 19, 2012, respectively. On May 1, 2013, Arrant filed a "Disputed Claim for Compensation"—LWC Form 1008— with the OWC seeking judicial review of the medical director's decision to deny the recommended MRI.[5] Thereafter, LWCC and Acree, Inc. ("defendants,"

---

[2] We granted writ in this case only to review that portion of the judgment granting defendants' exception of prescription. We decline to exercise our supervisory jurisdiction to address the applicants' remaining assignments of error.

[3] Following trial, Arrant passed away from natural causes unrelated to the injuries alleged in his petition. Thereafter, the OWC granted a motion to substitute his surviving spouse, Michele Arrant, and his children, Allison Michele Arrant and Staci Ranae Arrant Greene, as parties plaintiff in this matter.

[4] At trial, the parties stipulated to Arrant's employment with Acree, Inc., that he was involved in an accident within the course and scope of his employment, and that, at the time of trial, he was receiving temporary, total disability benefits.

[5] Arrant amended and supplemented his Form 1008 on two occasions prior to trial to add various other claims which we decline to address in this opinion.

collectively) filed, among other things, an ***exception of prescription***,[6] grounded in Arrant's failure to appeal the medical director's decision within "15 calendar days of the date said determination is mailed to the parties," as required by La. Admin. Code Title 40, Part I, Chapter 27, Section 2715.

Following a trial on the merits, the OWC issued a judgment which, among other things, granted defendants' exception of prescription because "[c]laimaint failed to timely file his appeal of the Office of Workers' Compensation Medical Director's decision affirming LWCC's denial to provide authorization for the lumbar MRI requested by Dr. Brown." The Court of Appeal for the Second Circuit affirmed, finding:

> As stated in La. R.S. 23:1291(B) and La. R.S. 23:1203.1(B), the legislature provided the director of the OWC with the power to promulgate rules and regulations to expedite the process of workers' compensation claims in order to further its intent of providing services to injured employees in an "efficient and timely manner." La. R.S. 23:1203.1(L). The director of the OWC acted within its authority when promulgating the 15–day appeal period set forth in Title 40, Part 1, Chapter 27, Section 2715B(3)(f). The 15–day period comports with the legislature's intent. Further, this time period is not unreasonable, notably in light of the fact that a claimant may file subsequent requests for review of the medical director's decision. . . . Because Mr. Arrant failed to file a 1008 form challenging the medical director's determination within 15 days of the decision, the trial court did not err in granting Defendants' peremptory exception of prescription.[7]

We granted certiorari to determine whether the Court of Appeal erred in affirming this judgment granting defendants' exception of prescription premised on Arrant's failure to abide by the time period the director of the Office of Workers' Compensation Administration set out in Title 40, Part I, Chapter 27, Section 2715(B)(3)(f) of the Louisiana Administrative Code.[8]

## DISCUSSION

La. Rev. Stat. 23:1203.1 empowers the director of the Office of Workers'

---

[6] Specifically, defendants' styled this pleading as a "Peremptory Exception of Preemption [sic] or, Alternatively, Prescription."

[7] *Arrant v. Wayne Acree PLS, Inc.*, 49, 698, p. 10 (La. App. 2 Cir. 4/15/15), 164 So.3d 321, 328.

[8] *Arrant v. Wayne Acree PLS, Inc.*, 15-0905, p. 1 (La. 6/30/15), 172 So.3d 1095.

Compensation Administration to "promulgate rules…to establish a medical treatment schedule"[9] and provides that this medical treatment schedule will set the standard for all medical treatment due by the employer to injured workers.[10] An injured worker can obtain from his employer medical treatment that varies from the schedule

> when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.[11]

When the employer or its insurer refuses to pay for requested medical care, the injured worker may file an appeal with the medical director. Under La. Rev. Stat. 23:1203.1(J), as relevant here,

> If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, *within fifteen calendar days*, an appeal with the office of workers' compensation administration medical director on a form promulgated by the director. The medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.[12]

La. Rev. Stat. 23:1203.1(K) provides a process by which any party who disagrees with the medical director's decision may seek review of that decision, first by a hearing officer with the OWC, then by the Court of Appeal, and finally by writ application to this Court. Notably, although the Legislature explicitly provided a 15-day period during which an injured worker *may appeal* an employer's refusal to

---

[9] La. Rev. Stat. 23:1203.1(B).

[10] La. Rev. Stat. 23:1203.1(I). Note this part of the statute was amended and reenacted in 2014 to correct an error in punctuation. 2014 La. Acts No. 791. This change did not affect the substance of the statute.

[11] *Id.*

[12] La. Rev. Stat. 23:1203.1(J) (emphasis added). As the Court of Appeal acknowledged, La. Rev. Stat. 23:1203.1 was amended in 2012, 2013, and 2014. The 2013 amendments added provisions for an assistant medical director in Sections (J) and (K). 2013 La. Acts No. 317. These amendments did not change the substance of the statute. Note also that Act 317 reenumerated part (J), placing the substance of the quoted text in La. Rev. Stat. 23:1203.1(J)(1) and adding part (J)(2) which provides the procedure to be followed in the event a potential conflict of interest arises.

provide medical care *to the medical director*, La. Rev. Stat. 23:1203.1(K) is *silent* concerning a corresponding period during which a party *must file* his claim *with the OWC*:

> After the issuance of the decision by the medical director of the office, any party who disagrees with the medical director's decision, may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008. The decision of the medical director may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director was not in accordance with the provisions of this Section.[13]

By promulgating Title 40, Part I, Chapter 27, Section 2715(B)(3)(f) of the Louisiana Administrative Code, the director of the Office of Workers' Compensation Administration sought to fill this gap:

> In accordance with LAC 40:I.5507.C, any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing a Form LWC-WC-1008 in a workers' compensation district office *within 15 calendar days of the date said determination is mailed to the parties*. A party filing such appeal must simultaneously notify the other party that an appeal of the medical director's decision has been filed. Upon receipt of the appeal, the workers' compensation judge shall immediately set the matter for an expedited hearing to be held not less than 15 days nor more than 30 calendar days after the receipt of the appeal by the office. The workers' compensation judge shall provide notice of the hearing date to the parties at the same time and in the same manner.[14]

On the basis of Arrant's failure to file his appeal with the OWC within this 15-day period, the OWC granted defendant's exception of prescription, and the Court of Appeal affirmed this judgment.

Indeed, we cannot stress enough that this case requires us to review a *judgment* affirming an *exception of prescription*. Liberative prescription is a mode of barring actions as a result of inaction for a period of time.[15] As our Civil Code explicitly recognizes, the Legislature has the authority to set time limitations on legal actions.[16] Because prescription triggers the extinction of a claim,[17]

---

[13] La. Rev. Stat. 23:1203.1(K).

[14] La. Admin. Code tit. 40, pt. I, ch. 27, § 2715(B)(3)(f) (emphasis added).

[15] La. Civ. Code art. 3447.

[16] La. Civ. Code art. 3457 ("There is no prescription other than that established by legislation.");

prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it.[18] As, in accordance with La. Civ. Code art. 3457, "[t]here is no prescription other than that established by legislation," we must determine whether or not the Legislature has provided for prescription in this instance.

It is well established that the Legislature, after fixing a primary standard, may confer upon administrative officers in the executive branch the power to "fill up the details" by prescribing administrative rules and regulations.[19] As we have recognized, "even when the Legislature has properly delegated to an agency certain administrative or ministerial authority, *the regulations promulgated by the agency may not exceed the authorization delegated by the Legislature.*"[20] Leaving aside whether or not it *would be* proper for the Legislature to delegate to an administrative agency the power to designate a prescriptive period, we first look to the statute to determine whether the Legislature delegated this power at all or whether the director promulgated the regulations at issue in this case absent legislative empowerment.[21] Thus, the straightforward question before us is whether the director exceeded the authority delegated by the Legislature by promulgating Title 40, Part I, Chapter 27, Section 2715(B)(3)(f) of the Louisiana Administrative Code. In order to answer this question, we must determine the scope of the

---

*see also SS v. State ex rel. Dept. of Soc. Serv.*, 02-0831, p. 6 (La. 12/4/02), 831 So.2d 926, 931 ("It is also well accepted that the Legislature has the authority to set time limitations on legal actions.").

[17] Note, however, that a natural obligation remains after the accrual of prescription. Comment (b) to La. Civ. Code art. 3447.

[18] *Bailey v. Khoury*, 04-0620, p. 9 (La. 1/20/05), 891 So.2d 1268, 1275; *Bouterie v. Crane*, 616 So.2d 657, 660 (La. 1993).

[19] *State v. Alfonso*, 99-1546, p. 7 (La. 11/23/99), 753 So.2d 156, 161; *Adams v. State Dept. of Health & Human Res.*, 458 So.2d 1295, 1298 (La. 1984) ("Louisiana courts have upheld the constitutionality of statutes delegating broad powers to administrative officers to determine the details of legislative scheme where those statutes express a clear legislative policy and contain sufficient standards for the guidance of the administrative official empowered to execute the law.").

[20] *Alfonso*, 99-1546 at 8, 753 So.2d at 162.

[21] Because we find the Legislature did not delegate to the director of the Office of Workers' Compensation Administration the power to designate a prescriptive period, we do not need to address whether or not the Legislature *could* expressly delegate this power to an agency.

Legislature's delegation to the director.

La. Rev. Stat. 23:1291 creates the Office of Workers' Compensation Administration and delegates to its director various enumerated powers. As relevant to the rule the director promulgated here, La. Rev. Stat. 23:1291(B) delegates the following to the director of the Office of Workers' Compensation Administration:

> The director shall have the following powers, duties, and functions:
>
> . . . .
>
> (5) To establish and promulgate in accordance with the Administrative Procedure Act such rules and regulations governing the administration of this Chapter and the operation of the office as may be deemed necessary and which are not inconsistent with the laws of this state.
>
> . . . .
>
> (10) To require the use of appropriate procedures, including a utilization review process that establishes standards of review, for determining the necessity, advisability, and cost of proposed or already performed hospital care or services, medical or surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal, and to resolve disputes over the necessity, advisability, and cost of same.
>
> (11) To engage the services of qualified experts in the appropriate health-care fields to assist him in the discharge of his responsibilities in Paragraph (10) of this Subsection, and to establish fees and promulgate rules and procedures in furtherance of his performance of these duties.

Moreover, La. Rev. Stat. 23:1203.1(B) requires the director, "through the office of workers' compensation administration, [to] promulgate rules in accordance with the Administrative Procedure Act, La. Rev. Stat. 49:950 et seq., to establish a medical treatment schedule." The Court of Appeal found that both La. Rev. Stat. 23:1291(B) and La. Rev. Stat. 23:1203.1(B) provided a legislative basis for promulgating the rule setting out the 15-day period for appealing the medical director's determination, and Arrant's failure to appeal during this time period provided appropriate grounds for sustaining an exception of prescription. We

7

disagree. While these statutes delegate to the director broad general authority to promulgate rules and regulations concerning the medical treatment schedule, they do not provide the director power to designate a prescriptive period. This is clear. The Legislature exercised this power *without qualification* in La. Rev. Stat. 23:1209. Indeed, La. Rev. Stat. 23:1209(C) ***specifically*** establishes a prescriptive period for claims for medical benefits like those brought by Arrant:

> All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.

It is a fundamental rule of administrative law that if the Legislature has directly spoken on a specific question at issue, the court as well as the agency must give effect to the Legislature's unambiguously expressed intent.[22] Here, the Legislature explicitly provided a prescriptive period for "all claims for medical benefits." Therefore, any attempt to alter the prescriptive period laid out in this statute is *ultra vires*. Because all of the director's power comes from the enabling statute and no statute explicitly or implicitly delegates to the director the power to alter the prescriptive period plainly provided in La. Rev. Stat. 23:1209(C) for "[a]ll claims for medical benefits payable pursuant to R.S. 23:1203," the 15-day period set out in Title 40, Part I, Chapter 27, Section 2715(B)(3)(f) of the Louisiana Administrative Code cannot provide a legitimate basis for sustaining an exception of prescription under the facts of this case.

The suggestion by the Court of Appeal that the worker could simply re-file

---

[22] *Midtown Medical, LLC v. Dept. of Health & Hosp.*, 14-0005, p. 2 (La. 3/14/14), 135 So.3d 594, 595; *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) ("When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

the same request for reimbursement after the OWC has issued a *judgment* granting an exception of prescription is legally wrong and practically absurd. Where an action is barred by prescription, the civil obligation is extinguished. It is a final, appealable judgment,[23] and any attempt to reurge the same claim would be vulnerable to a peremptory exception of *res judicata*.[24] Moreover, this course runs contrary to the purpose of the Louisiana Workers' Compensation Act that these claims be resolved quickly and efficiently.[25] Further, this interpretation is economically inefficient—bad for employers/insurers who must pay additional attorney fees to their defense lawyers, bad for workers who must repeat an administrative process in order to receive review of their request for the medical treatment they may very well need, and bad for the State which must expend valuable administrative resources re-examining an initial request for treatment that was already denied at the initial stage. Finally, this interpretation would absolutely and seriously undermine the *quid pro quo* that the Act has established because it affects the worker's access to medical benefits, the most central element of the workers' compensation scheme. All of these considerations further support our decision.

Accordingly, we reverse and vacate in part that portion of the judgment sustaining the defendants' peremptory exception of prescription, and we remand for the OWC to consider the merits of Arrant's claim that the medical director

---

[23] *Rousseau v. Emp'rs Mut. of Wausau*, 493 So.2d 121, 124 (La. App. 5 Cir. 1986) ("[A] judgment sustaining the exception of prescription is a final appealable judgment, even in cases where only a portion of the case is dismissed by the exception."); *Sewerage & Water Bd. of New Orleans v. Sanders*, 246 So.2d 734, 735 (La. App. 4 Cir. 1971) ("It is difficult for this court to conceive of a judgment more final than the maintaining of a plea of prescription.").

[24] La. C.C.P. art. 1673 ("A judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial."); *Sims v. American Ins. Co.*, 12-0204, p. 9 (La. 10/16/12), 101 So.3d 1, 7 ("[A] dismissal with prejudice has 'the effect of a final judgment of absolute dismissal after trial,' and therefore, has *res judicata* effect on the parties to the suit dismissed with prejudice.").

[25] La. Rev. Stat. 23:1203.1(L) ("It is the intent of the legislature that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees.").

9

failed to appropriately apply the medical treatment guidelines in denying the lumbar spine magnetic resonance imaging requested by his orthopedic surgeon. In all other respects, we affirm the judgment.

**AFFIRMED IN PART. REVERSED AND VACATED IN PART. REMANDED.**

01/27/2016

# SUPREME COURT OF LOUISIANA

## NO. 2015-C-0905

## CALVIN ARRANT

### VERSUS

## WAYNE ACREE PLS, INC. & LOUISIANA WORKERS' COMPENSATION CORPORATION

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, OFFICE OF WORKERS' COMPENSATION, DISTRICT 1E

**GUIDRY, J., dissents for the reasons assigned by Crichton, J.**

01/27/2016

SUPREME COURT OF LOUISIANA

NO. 2015-C-0905

CALVIN ARRANT

VERSUS

WAYNE ACREE PLS, INC. & LOUISIANA WORKERS'
COMPENSATION CORPORATION

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND
CIRCUIT, OFFICE OF WORKERS' COMPENSATION, DISTRICT 1E


**CRICHTON, J., dissents and assigns reasons:**

I respectfully dissent from the majority opinion, and would affirm the hearing officer's ruling sustaining defendants' peremptory exception of prescription. In my view, for the reasons set forth below, I find the lower courts correctly found that plaintiff's appeal of the denial of his requested medical treatment (an MRI) was untimely filed, as it was filed outside of the appeal delays found in La. R.S. 23:1203.1 and the corresponding Administrative Code provisions: 40 LAC I.2715(B)(3)(e) and 40 LAC I.2715(B)(3)(f)). Specifically, I do not find the time periods set forth in the aforementioned statutes are prescriptive periods, but are appeal delays appropriately created to comply with the statute's intent to accomplish efficient and swift resolution of medical treatment disputes.

The general prescriptive periods in the Louisiana Workers Compensation Act are set forth in La. R.S. 23:1209(A), which provides that the claim of an injured employee for weekly benefits is not prescribed if filed within the following time periods: (1) within one year from the date of the accident; or (2) one year from the last payment of compensation, except that in cases of benefits payable pursuant to La. R.S. 23:1221(3), the limitation shall not take effect until three years

after the last weekly of compensation; or (3) one year from the time the injury develops. But in all such cases the claim for payment shall be forever barred unless the proceedings have begun within three years of the date of the accident. Similarly, La. R.S. 23:1209(C) provides that all claims for medical benefits under La. R.S. 23:1203 "shall be filed within one year after the accident or death the parties have agreed upon the payments to be made under that Chapter, or unless within one year after the accident a formal claim has been filed with the workers' compensation office." In that instance, the limitation shall not take effect until three years from the time of making the last payment of medical benefits. La. R.S. 23:1209(C).

It is well settled that historically, in line with the general intent of the Workers' Compensation Act and related jurisprudence, courts have utilized a generally lenient view of prescriptive periods.[1] Thus, prescription statutes, including La. R.S. 23:1209(A), are construed in favor of maintaining rather than barring actions. *See, e.g., Taylor v. Liberty Mut. Ins. Co.*, 579 So.2d 443, 446 (La. 1991); *Howard v. Trelles*, 95-0227, p. 4 (La.App. 1 Cir. 02/23/96), 669 So.2d 605, 607. Furthermore, for those time periods that are listed specifically in La. R.S. 12:1209, the purposes are well established: (1) to enable an employer to determine when his potential liability for an accident would cease; (2) to prevent suits based on stale claims where evidence might be destroyed or difficult to produce; and (3) to fix a statute of repose giving rise to a conclusive presumption of waiver of his claim on the part of an employee where he fails to bring his suit within the fixed period. *Harris v. Traders and General Ins. Co.*, 200 La. 445, 458, 8 So. 2d 289, 293 (La. 1942); *Lunkin v. Triangle Farms, Inc.*, 208 La. 538, 23 So. 2d 209 (1945).

---

[1] *Scott v. Walmart Stores, Inc.*, 03-0104, p. 6 (La. App. 4 Cir. 7/2/03), citing *Millican v. General Motors Corp.*, 34,207, p. 1 (La. App. 2 Cir. 11/1/00), 771 So.2d 234, 235, *writ denied*, 2001-0001 (La.3/23/01), 788 So.2d 426; See, *e.g., Glascock v. Georgia-Pacific Corp.*, 25,677 (La. App. 2 Cir. 03/30/94), 635 So.2d 474, 479; *Wesley v. Claiborne Elec. Co-op., Inc.*, 446 So.2d 857 (La. App. 2 Cir.1984); *See generally*, 14 La. Civ. L. Treatise, H. Alston Johnson III, Workers' Compensation Law and Practice § 384 (4th ed.2002)

*See also,* 14 La. Civ. L. Treatise, H. Alston Johnson III, Workers' Compensation Law and Practice § 384 (4th ed. 2002).

In my view, however, the time periods set forth in the subject statute, La. R.S. 23:1203.1, are **not** prescriptive statutes at all, and are in fact not intended to satisfy the objectives listed above. Rather, as this court has discussed previously, and as noted by the appellate court in this matter, La. R.S. 23:1203.1 was enacted with the express intent "that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees." La. R.S. 23:1203.1(L). This court thoroughly examined the history and purpose behind La. R.S. 23:1203.1 in *Church Mut. Ins. Co. v. Dardar*, 13-2351 (La. 5/7/14), 145 So. 3d 271, 275-6:

> Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. 1 DENIS PAUL JUGE, LOUISIANA WORKERS' COMPENSATION, § 13:6 (2d ed.2013). Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. *Id*. In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. *Id*.[2]

La. R.S. 23:2301.1 provides that the director of the Office of Workers' Compensation Administration "shall . . . .promulgate rules in accordance with the

---

[2] The *Church Mut. Ins. Co.* court also stated in a footnote that "[p]rior to the enactment of La. R.S. 23:1203.1. the determination of what medical treatment was appropriate was entrusted in the first instance to an insurer, which was tasked with evaluating any request for medical treatment in excess of $750. La. R.S. 23:1142. If a dispute arose as to whether a particular treatment was reasonable and necessary, the task of resolving that dispute was left to an OWC judge, who would resolve that dispute on an ad hoc basis, generally after a second medical opinion examination, perhaps an OWC-ordered independent medical examination, and on competing testimony of medical providers as to what was, in their respective opinions, "medically necessary" under the circumstances." *Church Mut. Ins. Co., supra*, at n. 3.

3

Administrative Procedure Act, R.S. 49:950, *et seq.*, to establish a medical treatment schedule." La. R.S. 23:1203.1(B). *See also*, La. R.S. 23:1291(B)(5) (giving authority to the director of the OWC to promulgate rules in accordance with the Louisiana Administrative Code "which are not inconsistent with the laws of this state.") Most pertinent to the issue presently before the court, La. R.S. 23:1203.1(J) and (K) state as follows:

> J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, **any aggrieved party shall file, within fifteen calendar days**, an appeal with the office of workers' compensation administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
>
> > (2) If either party, the medical director, or associate medical director believes that a potential conflict of interest exists, he shall communicate in writing such information to the director, who shall make a determination as to whether a conflict exists within two business days. The director shall notify in writing the patient, the physician, and, if applicable, the attorney of his decision within two business days.
>
> K. After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision, may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section. (Emphasis added)

* * *

Under the plain terms of the aforementioned provisions, an appeal from a dispute concerning requested medical treatment requires a multi-step process. After an initial request for authorization for treatment is submitted, the "payor" must notify the medical provider of their decision within five (5) business days. If a dispute thereafter arises as to whether the treatment is in accordance with the

medical treatment schedule or a variance from the schedule is required, any

aggrieved party must then file, within fifteen (15) calendar days, an appeal to the

medical director or associate medical director. The director then has thirty days to

render a decision. After the issuance of that decision, any party who disagrees

with the decision may then file an appeal through the filing of a Form 1008 (a

Disputed Claim for Compensation). As the revised statute is written, there is no

time period listed for the filing of Form 1008. *See* La. R.S. 23:1203.1(K).

However, the related Administrative Code provisions (40 LAC I.2715(B)(3)(e) and

40 LAC I.2715(B)(3)(f)) do set forth a time period for the filing of the Form 1008:

> (B)(3)(e)  Disputes shall be filed by any aggrieved party on a LWC-WC-1009 **within 15 calendar days** of receipt of the denial or approval with modification of a request for authorization. The medical director shall render a decision as soon as practicable, but in no event later than 30 calendar days from the date of filing. The decision shall determine whether:
>> i. the recommended care, services, or treatment is in accordance with the medical treatment schedule; or
>> ii. a variance from the medical treatment schedule is reasonably required; or
>> iii. the recommended care, services, or treatment that is not covered by the medical treatment schedule is in accordance with another state's adopted guideline pursuant to Subsection D of R.S. 23:1203.1.

> (B)(3)(f)  In accordance with LAC 40:I.5507.C, any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing a Form LWC-WC-1008 in a workers' compensation district office **within 15 calendar days** of the date said determination is mailed to the parties. A party filing such appeal must simultaneously notify the other party that an appeal of the medical director's decision has been filed. Upon receipt of the appeal, the workers' compensation judge shall immediately set the matter for an expedited hearing to be held not less than 15 days nor more than 30 calendar days after the receipt of the appeal by the office. The workers' compensation judge shall provide notice of the hearing date to the parties at the same time and in the same manner.[3]

---

[3] Although it does not bear any weight on my viewpoint contained herein, it is interesting to note that the documents provided to the plaintiff in this instance informing him that his requested medical treatment had been denied provide the following instructions for appealing the denial:

Dispute Resolution Process

Any party feeling aggrieved by the R.S. 23:1203.1(J) determination of the medical director shall seek a judicial review by filing Form LWC-WC-1008 Disputed Claim for Compensation with the appropriate hearing office within 15

* * *

In this case, the Office of Workers' Compensation judge found that the plaintiff's Form 1008, filed May 1, 2013, disputing the Medical Director's denial of his requested MRI on September 18, 2012, and October 19, 2012, was untimely and granted the defendants' exception of prescription. Although I specifically question the use of an exception of prescription as the proper vehicle to enforce this particular appeal period (the statute as written does not presently provide a mechanism), nevertheless, I conclude that the rulings that plaintiff's appeal was untimely were correct. Further, while the appeal of the denial of this particular request in this instance may be untimely in that it was filed outside of the appeal period listed in the statute, as the court of appeal noted as well, the plaintiff is not prevented from filing a *new* request for this medical treatment. La. Civ. Code art. 3463 provides that "[a]n interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending. . . ." Because the original Form 1008 was filed in the workers' compensation office on May 1, 2013, it served as a continuing interruption of prescription. Merely because the workers' compensation judge found that this particular filing by plaintiff was untimely pursuant La. R.S. 23:2301.1—that is, the delay period to appeal the decision regarding treatment lapsed—this does not bar the plaintiff from submitting a renewed or different request for medical treatment.

As the statute specifically states, and the *Church Mut. Ins. Co.* court explained, the purpose of this statute was an attempt to avoid battles over the "choice of physician" and to provide medical treatment in a "timely and efficient" manner. In order to satisfy the legislative intent, the short timeframe of fifteen (15) days was established. Moreover, it is likely the legislature viewed this particular

days of the date said determination is made to the parties. . . . ."

6

procedure in terms of an independent request and decisional process for medical treatment, which would be available even if there were not a current pending suit for disputed compensation.[4] I specifically do not find the failure to abide by the efficient time periods set forth in the statute precludes a claimant from filing a new request or new claim for medical treatment, and disagree with the majority that such a process is "practically absurd."[5] As La. R.S. 23:1310.8(A) provides, "[t]he power and jurisdiction of the workers' compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified. . . ." Consequently, even if a particular request may be untimely if filed outside of the delay period set forth in La. R.S. 23:1203.1, again, I find nothing that would preclude a workers' compensation hearing officer from entertaining a renewed or different request for treatment under that same provision. In fact, as mentioned above, as the statute is presently written, it is devoid of a particular procedural remedy to "enforce" the appeal periods, and as such, finding the plaintiff's appeal untimely in this instance was not inappropriate. To find otherwise would render the efficient administrative procedure set forth in La. R.S. 23:1203.1 meaningless. In my view, contrary to

---

[4] As the *Dardar* court stated, the legislative history of this statute, while providing no legal authority, revealed nothing profound in terms of the statute's origins:

> While unnecessary to a proper resolution of the issues presented, for the sake of thoroughness, we have examined the legislative history of Act 254 of 2009 and find nothing remarkable in its genesis or progression through the legislative process. The bill originated in the Senate as SB 303 and was passed by unanimous vote. The final vote in the House was 69 to 35 in favor of passage, with the floor debate centered almost entirely on a controversial amendment unrelated to the contents of the bill that was ultimately removed from the final Act. The Bill passed through the Senate and House Committees on Labor and Industrial Relations with favorable reports, and testimony substantiating the notion that the bill was a collaborative endeavor on the part of employers, insurers, labor and the medical community.

> *Dardar, supra,* at n. 4.

[5] In fact, the plaintiff testified at the trial of this matter that he underwent a second MRI in October, 2013, which **was** approved by the medical director.

7

the majority's reasoning that this process is "economically inefficient," I believe the statute was enacted with the intent to avoid unnecessary delays for the employee seeking treatment, while assuring the employer that the medical treatment sought is reasonable and necessary. As such, I would find that the lower courts correctly ruled that the plaintiff's appeal from the medical director's denial of his requested MRI was untimely filed, as the time period under La. R.S. 23:1203.1 had lapsed. For these reasons, I respectfully dissent from the majority's finding otherwise.